# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

In the Matter of: Highland Capital Management, L.P.,

Debtor,

Highland Capital Management, L.P.,

Appellee,

v.

NexPoint Asset Management, L.P., formerly known as Highland Capital
Management Fund Advisors, L.P.; NexPoint Advisors, L.P.; NexPoint Real Estate
Partners, L.L.C., formerly known as HCRE Partners L.L.C.; Highland Capital
Management Services, Incorporated; James Dondero,

Appellants.

_____

In the Matter of: Highland Capital Management, L.P.,

Debtor,

James D. Dondero,

Appellant,

v.

Highland Capital Management, L.P.,

Appellee.

Appeal from the United States District Court for the
Northern District of Texas, the Honorable Brantley Starr
Civ. Act. No. 3:21-cv-00881-X

CORE/3522697.0002/188427912.9

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In the Matter of: Highland Capital Management, L.P.,

Debtor,

Highland Capital Management, L.P.,

Appellee,

v.

NexPoint Asset Management, L.P., formerly known as Highland
Capital Management Fund Advisors, L.P.,

Appellant.

Appeal from the United States District Court for the
Northern District of Texas, the Honorable Brantley Starr
Civ. Act. No. 3:21-cv-00881-X

## APPELLANTS' REPLY BRIEF

Deborah Deitsch-Perez, Esq.
Michael Aigen, Esq.
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
**ATTORNEYS FOR APPELLANTS**

Davor Rukavina
Julian P. Vasek
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
(214) 855-7500 telephone
(214) 978-4375 facsimile
**ATTORNEYS FOR APPELLANTS
NEXPOINT ASSET MANAGEMENT,
L.P. (F/K/A HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS,
L.P.) and NEXPOINT ADVISORS, L.P.**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1̲1

II.   ARGUMENT............................................................................3̲3

    A.    The Bankruptcy Court Improperly Disregarded the Established Summary Judgment Legal Standard that Requires the Non-moving Party to Receive the Benefit of the Doubt. ........................3̲3

    B.    The Dondero Declarations Are Not Conclusory and Raise Genuine Issues of Material Fact Because They Are Supported by Specific Facts and Are Corroborated by the Record........................8̲8

    C.    Appellee Misconstrues and Continues to Ignore Basic Facts Supporting the Existence of the Agreements. ................15̲15

    D.    Appellants Demonstrated that the Agreements Were Supported by Adequate Consideration. ..............................................17̲17

    E.    Appellees Improperly Make New Arguments on Appeal Related to the Authority Necessary to Enter into the Agreements..................18̲18

    F.    Appellants Demonstrated a Genuine Issue of Material Fact Regarding Their Prepayment Defenses...........................20̲20

    G.    Appellants Demonstrated a Genuine Issue of Material Fact Regarding Their Shared Service Defenses.....................21̲21

    H.    Appellant NAM's Mutual Mistake Defense Creates a Genuine Issue of Material Fact. ...................................................23̲23

III.  CONCLUSION............................................................................27̲27

CORE/3522697.0002/188427912.9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addicks Services, Inc. v. GGP-Bridgeland, LP,*
    596 F.3d 286 (5th Cir. 2010) .......................................................................21, 22

*Al-Saud v. Youtoo Media, L.P.,*
    3:15-CV-3074-C, 2017 WL 3841197 (N.D. Tex. Mar. 15, 2017) ......................4

*Alton v. Texas A&M University,*
    168 F.3d 196 (5th Cir. 1999) .........................................................................6, 7

*Bargher v. White,*
    928 F.3d 439 (5th Cir. 2019) , as revised (July 2, 2019) ....................................9

*BMG Music v. Martinez,*
    74 F.3d 87 (5th Cir. 1996) ...........................................................................11, 12

*Brown v. Jackson,*
    40 S.W. 162 (Tex. Civ. App. 1897, no writ) ....................................................18

*DIRECTV, Inc. v. Budden,*
    420 F.3d 521 (5th Cir. 2005) .......................................................................12, 13

*Douglass v. Panama Inc.,*
    504 S.W.2d 776 (Tex. 1974) ............................................................................25

*Eason v. Thaler,*
    73 F.3d 1322 (5th Cir. 1996) ...........................................................................10

*In re El Paso Pipeline, L.P. Derivative Litig.,*
    132 A.3d 67 (Del. Ch. 2015), judgment entered sub nom. *In re: El
    Paso Pipeline Partners, L.P.* (Del. Ch. 2016) and *rev'd* sub nom.
    *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff,* 152 A.3d 1248
    (Del. 2016) ......................................................................................................19

*Envtl. Conservation Org. v. City of Dallas, Tex.,*
    529 F.3d 519 (5th Cir. 2008) .............................................................................4

ii

*Forsythe v. ESC Fund Mgmt. Co.(U.S.), Inc.*,
    CA. No. 1091-VCL, 2007 WL 2982247 (Del. Ch. Oct. 9, 2007) ......................19

*Gaines v. Kelly*,
    235 S.W.3d 179 (Tex. 2007) ............................................................25

*Gulbenkian v. Penn.*
    151 Tex. 412, 252 S.W.2d 929 (1952) ............................................4, 5

*Gunville v. Gonzales*,
    508 S.W.3d 547 (Tex. App.—El Paso 2016, no pet.) .........................................9

*Hoard v. McFarland*,
    229 S.W. 687 (Tex. App.—Texarkana 1921, writ ref'd) .................................18

*IRA Res., Inc. v. Griego*,
    221 S.W.3d 592 (Tex. 2007) ............................................................24

*Kariuki v. Tarango*,
    709 F.3d 495 (5th Cir. 2013) ...........................................................11

*Katy Int'l, Inc. v. Jinchun Jiang*,
    451 S.W.3d 74 (Tex. App.—Houston [14th Dist.] 2014, pet.
    denied).................................................................................18

*LegacyRG, Inc. v. Harter*,
    705 F. App'x 223 (5th Cir. 2017) .....................................................4, 6

*Lester v. Wells Fargo Bank, N.A.*,
    805 Fed. Appx. 288 (5th Cir. 2020)......................................................8

*Looney v. Irvine Sensors Corp.*,
    CIV.A.309-CV-0840-G, 2010 WL 532431 (N.D. Tex. Feb. 15,
    2010) .....................................................................................3

*Main St. Bank v. Unisen, Inc.*,
    No. CV H-06-3776, 2008 WL 11483415 (S.D. Tex. Feb. 15, 2008).................5

*In re Palms at Water's Edge, L.P.*,
    334 B.R. 853 (Bankr. W.D. Tex. 2005)..............................................15

*Porter v. Houma Terrebonne House. Autho. Bd. Of Comm'rs*,
    810 F.3d 940 (5th Cir. 2015) ...........................................................4

iii

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ...................................4

*Resol. Tr. Corp. v. Starkey*,
41 F.3d 1018 (5th Cir. 1995) ................................................................................3

*Roark v. Stallworth Oil and Gas, Inc.*,
813 S.W.2d 492 (Tex. 1991) ..............................................................................18

*Samuel v. Holmes*,
138 F.3d 173 (5th Cir. 1998) ................................................................................4

*Silverio v. Silverio*,
625 S.W.3d 680 (Tex. App.—El Paso 2021, no pet.) ........................................24

*United States v. Lawrence*,
276 F.3d 193 (5th Cir. 2001) ..............................................................................13

*Yaquinto v. Segerstrom (In re Segerstrom)*,
247 F.3d 218 (5th Cir. 2001) ................................................................................4

**Statutes**

Tex. Bus. & Comm. Code Ann. §§ 3.308(a) & 3.402(a)........................................24

**Other Authorities**

3 McDonald & Carlson Tex. Civ. Prac. § 18:19 (2d. ed.) ........................................8

51 Tex. Jur. 3d Motion Procedure § 6 ......................................................................8

68 Tex. Jur. 3d Summary Judgment §§ 13-24, 40-41 ...............................................8

CORE/3522697.0002/188427912.9

<u>**APPELLANTS' REPLY BRIEF**</u>

Appellants NexPoint Asset Management, L.P., formerly known as Highland Capital Management Fund Advisors, L.P. ("NAM"); NexPoint Advisors, L.P. ("NPA"); NexPoint Real Estate Partners, L.L.C., formerly known as HCRE Partners L.L.C. ("NPREP"); Highland Capital Management Services, Incorporated ("HCMS"); and James Dondero ("Dondero") (collectively "Appellants"), submit this reply brief, in support of which they state as follows:

## I.    INTRODUCTION

The responsive brief ("Appellee Brief") filed by Highland Capital Management, L.P. ("Appellee" or "HCMLP") both mischaracterizes critical facts and fails to properly apply the law to the actual facts here. Appellee asks the Court to affirm the Bankruptcy Court and allow it to do something it cannot do at summary judgment: determine the credibility of witnesses and affiants. Specifically, as demonstrated throughout the Appellant Brief, the Bankruptcy Court ignored the evidence submitted by Appellants and made credibility determinations concerning Appellants' witnesses' testimony and the relative weight of Appellee's versus Appellants' evidence. The Bankruptcy Court's disregard of testimony and other evidence in support of Appellants' contentions usurped the role of the ultimate factfinder and undermined the rule of law.

1

For example, to find that "there are numerous reasons why this court believes no reasonable jury could find that there was truly an 'oral agreement' to forgive these loans to the Alleged Agreement Defendants," the Report discounts or ignores sworn testimony.[1] The Report also untruthfully contends that Appellee's evidence was "unrefuted" that certain notes were not prepaid, ignoring both testimonial and documentary evidence that they were prepaid.[2] Additionally, the Bankruptcy Court rejected Appellant NAM's mutual mistake defense as "unsubstantiated" when in fact there was considerable evidence that the intercompany transfers at issue were intended to reimburse expenses caused by Appellee's negligence, not loans.[3] Appellants were entitled to the benefit of all inferences to be drawn from the evidence, but the Bankruptcy Court did the opposite.

As explained below, Appellee (1) ignores the proper summary judgment standard; (2) fails to properly address the summary judgment evidence provided in the Dondero Declarations and the relevant law related to summary judgment declarations; (3) misconstrues and ignores crucial evidence supporting the existence of the Agreements;[4] (4) ignores the relevant law and evidence showing that there

---

[1] Compare ROA.23-10911.7228 with Appellant Brief at pp. 7-15 (recounting evidence).
[2] Compare ROA.23-10911.7236 with Appellant Brief at pp. 22-25 (recounting evidence).
[3] Compare ROA.23-10911.7243-7246 with Appellant Brief at pp. 66-69 (recounting evidence).
[4] "Agreements" is defined as it was in the Appellant Brief to refer to the various agreements between Appellants and Appellee between 2014 and 2020 with respect to the potential forgiveness of certain notes upon the fulfilment of certain conditions subsequent. Appellant Brief at p. 5.

CORE/3522697.0002/188427912.9

was adequate consideration supporting the Agreements; (5) improperly makes new arguments related to authority inconsistent with Delaware law; (6) ignores evidence submitted in support of Appellants' prepayment defense; (7) ignores evidence submitted in support of Appellants' shared service defense; (8) ignores evidence submitted in support of NAM's mutual mistake defense; and (9) misconstrues the relevant law. The District Court's decision adopting the Bankruptcy Court's Reports and Recommendations should be overturned and the Court should allow this case to proceed to trial.

## II. ARGUMENT

### A. The Bankruptcy Court Improperly Disregarded the Established Summary Judgment Legal Standard that Requires the Non-moving Party to Receive the Benefit of the Doubt.

Appellee ignores the requirement that the non-moving party always receives the benefit of the doubt at summary judgment. Appellee's characterization of promissory note cases being "fit grist for the summary judgment mill" is not on point, as courts are still required to view evidence in the light most favorable to the non-movant.[5] Indeed, "[a]ll doubts as to the existence of a genuine issue as to a

---

[5] *See* Appellee Brief at p. 37; *see also Resol. Tr. Corp. v. Starkey,* 41 F.3d 1018, 1022–23 (5th Cir. 1995) (summary judgment case addressing service of process sufficiency where defendants failed to even oppose plaintiff's motion for summary judgment); *Looney v. Irvine Sensors Corp.*, CIV.A.309-CV-0840-G, 2010 WL 532431, at *2 (N.D. Tex. Feb. 15, 2010) (courts must always "view[] the evidence in the light most favorable to the nonmoving party.").

material fact *must be resolved against the party moving for a summary judgment.*"[6] Without question, a court must view the summary judgment evidence in the light most favorable to the non-movant and *draw all reasonable inferences in favor of the non-movant*.[7] Further, in determining summary judgment, a *court must "refuse to make credibility determinations or weigh the relative strength of the evidence*, and disregard all evidence favorable to the movant that the jury would not have to believe."[8] Appellants are to fully benefit from all inferences drawn by the court. Here, they did not.[9]

The Bankruptcy Court weighed the credibility of Appellants' summary judgment evidence by finding that "[t]he 'oral agreement' defense does not pass the 'straight face' test[,]" stating that "*no document was ever uncovered or produced in discovery to establish, memorialize, or reflect the existence or terms of the alleged 'oral agreement.'*"[10] The Bankruptcy Court's reasoning that the *oral* Agreements

---

[6] *Gulbenkian v. Penn.* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952) (emphasis added); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150–51 (2000); *Legacy RG, Inc. v. Harter*, 705 F. App'x 223, 230–31 (5th Cir. 2017); *Porter v. Houma Terrebonne House. Autho. Bd. Of Comm'rs,* 810 F.3d 940, 942-43 (5th Cir. 2015).

[7] *Envtl. Conservation Org. v. City of Dallas, Tex.,* 529 F.3d 519, 524 (5th Cir. 2008); *Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218, 223 (5th Cir. 2001); *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).

[8] *Al-Saud v. Youtoo Media, L.P.*, 3:15-CV-3074-C, 2017 WL 3841197, at *2 (N.D. Tex. Mar. 15, 2017) (emphasis added) (citing *Haverda v. Hayes County*, 723 F.3d 586, 591 (5th Cir. 2013) (court may not weigh the credibility of the submitted evidence at summary judgment stage)).

[9] ROA.23-10911.7211 "[Appellant claims Appellees] are essentially trying to manufacture chaos by attempting to create fact issues with bizarre (if not preposterous) defenses. . . [and] the bankruptcy court agrees." (referring to the Agreements).

[10] ROA.23-10911.7228

CORE/3522697.0002/188427912.9

must not exist because they were not memorialized shows that it conducted a prohibited "*do I believe this declarant?*" analysis. This case is a prime example of when a Court must *not* take credibility determinations into its own hands. "The general rule is that *if a motion involves the credibility of affiants or deponents. . . the motion will not be granted*."[11] Here, the Bankruptcy Court itemized several reasons it discounted the Donderos' depositions and declarations as evidence of the Agreements,[12] as well as other portions of the Donderos' testimony.[13] That said, *each issue the Bankruptcy Court raised was rebutted by the Dondero Declarations in a non-conclusory fashion*.[14] In any event, the Report (and Appellee) ignored how the Dondero Declarations rebutted these issues. Thus, the Bankruptcy Court *decided it*

---

[11] *Gulbenkian v. Penn.*, 151 Tex. 412, 417, 252 S.W.2d 929, 932 (1952).

[12] Appellee's reliance on *Main St. Bank v. Unisen, Inc.*, No. CV H-06-3776, 2008 WL 11483415, at *2 (S.D. Tex. Feb. 15, 2008) for the proposition that a non-movant's bare assertions, standing alone, are not enough to create a material issue of fact is also misplaced. Appellee Brief at p. 45. Appellants point to many supporting details contained in the summary judgment evidence that bolster its defenses, discussed here and in their Appellant Brief.

[13] *See* ROA.23-10911.7228-7229. For instance, the Bankruptcy Court found that "without a list prepared by counsel, Mr. Dondero could not identify [specific terms of the Agreements]" at his deposition; that "Mr. Dondero. . . failed to declare the Notes forgiven [upon the sale of a portion of MGM][,];" and that Nancy Dondero was "not capable of entering into [the Agreements]" because the Bankruptcy Court unilaterally and erroneously decided she "had no meaningful knowledge" of certain facts.

[14] *See* ROA.23-10911.74592-74593 at ¶¶ 24-26 (explaining with specificity the terms and circumstances of the Agreements); ROA.23-10911.74600 at ¶ 47 (explaining why the Notes weren't declared forgiven upon the sale of a *de minimis* amount of MGM stock); ROA.23-10911.74658, 74661 at ¶¶ 2,9 (explaining Nancy Dondero's business background and her understanding of Appellee's business). *See also* Appellant Brief at pp. 29-36 for a more thorough discussion of how the summary judgment record addresses each point raised in the Reports.

CORE/3522697.0002/188427912.9

*did not believe the Dondero Declarations* and erred by making credibility determinations of that testimony.

Appellee similarly ignored the relevant case law cited by Appellants in their Appellant Brief. In their Appellant Brief, Appellants relied on *LegacyRG, Inc. v. Harter*, 705 F. App'x 223 (5th Cir. 2017), in which the Fifth Circuit reversed a district court's grant of summary judgment where both parties relied on sworn declarations that directly contradicted each other.[15] In that case, the Fifth Circuit held that the district court erred "[b]y choosing which testimony to credit and which to discard" and that doing so was "tantamount to making a credibility determination."[16] By contrast, Appellants pointed out that they offered declarations from both sides of the Agreements here, testifying to the Agreements' existence.[17] Appellee made no effort to address this case or explain how the Bankruptcy Court's decision did not violate the Fifth Circuit's stance against lower courts weighing opposing summary judgment declarations against each other, much less weighing consistent declarations against the court's own suspicions.

Rather than addressing the cases cited by Appellants, Appellee cites to inapplicable cases when addressing the proper summary judgment standard. For example, Appellee cites *Alton v. Texas A&M University*, 168 F.3d 196, 199 (5th Cir.

---

[15] Appellant Brief at pp. 26-27.
[16] *LegacyRG, Inc. v. Harter,* 705 F. App'x 223 at 230.
[17] Appellant Brief at p. 28.

CORE/3522697.0002/188427912.9

1999), for the proposition that summary judgment is appropriate when the "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[18]

In that case, the Court held that a municipality may be held liable for a constitutional violation if a detainee can show, among other things, that "the officials demonstrated deliberate indifference toward the constitutional rights of [plaintiff] by failing to take action that was obvious and necessary to prevent or stop the abuse."[19] The Court in that case, however, affirmed the district court's grant of summary judgment on the basis of qualified immunity, not because factual allegations or evidence provided by plaintiff were "weak or tenuous," but because plaintiff provided "no evidence that in responding to the incidents the officials acted with deliberate indifference in preventing abuse."[20]

Appellee points to no cases that explain how the Bankruptcy Court's decision did not violate the Fifth Circuit's summary judgment standard that requires all doubts as to the existence of a genuine issue of material fact to be resolved against the party moving for a summary judgment and requires courts to view the summary judgment evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.

---

[18] Appellee Brief at p. 39.
[19] *Alton*, 168 F.3d at 200.
[20] *Id.*

CORE/3522697.0002/188427912.9

### B. The Dondero Declarations Are Not Conclusory and Raise Genuine Issues of Material Fact Because They Are Supported by Specific Facts and Are Corroborated by the Record.

The Bankruptcy Court also incorrectly labeled the Dondero Declarations "conclusory."[21] The Report claims that there is "a complete lack of evidence for [the Agreements][,]" while it also claims that the Agreements were "only supported by the conclusory statements of [the Donderos][,]"[22] ignoring that sworn-to declarations and affidavits are competent summary judgment evidence.[23] The Report mirrors Appellee's similar position,[24] but neither one provides any analogous authority showing how or why the Dondero Declarations are conclusory or self-serving, nor did Appellee ever move to strike the Dondero Declarations as such.

"Broad legal or factual assertions in an affidavit that are *unsupported by specific facts* are generally held to be conclusory[,]"[25] and "an affidavit based on personal knowledge and containing factual assertions *suffices to create a fact issue, even if the affidavit is arguably self-serving*."[26] "A statement is conclusory if it does

---

[21] ROA.23-10911.7241
[22] *Id.*
[23] "[A]ffidavits are nonetheless the mainstay of the summary judgment evidence." 3 McDonald & Carlson Tex. Civ. Prac. § 18:19 (2d. ed.); 51 Tex. Jur. 3d Motion Procedure § 6; 68 Tex. Jur. 3d Summary Judgment §§ 13 to 24, 40 to 41.
[24] Appellee Brief, throughout.
[25] *Lester v. Wells Fargo Bank, N.A.,* 805 Fed. Appx. 288, 292 (5th Cir. 2020) (emphasis added) (citing cases).
[26] *Id.* at 291 (quoting *C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, F. App'x 439, 443 (5th Cir. 2011)) (emphasis added).

8

not provide the underlying facts to support the conclusion."[27] The Donderos presented many specific facts about the existence of the Agreements.[28] These specific facts included *when* the Agreements occurred, the *specific terms* of the Agreements, *which Notes* the Agreements applied to, and *why* the Agreements were made.[29] "Simply being 'self-serving,' however, *does not prevent a party's assertions from creating a dispute of fact.*"[30] Thus, even if Mr. Dondero's declaration is — as a party declaration — inherently self-serving (as is every party declaration), it and Nancy Dondero's declaration are far from conclusory and their credibility was improperly weighed.

Appellee's argument to the District Court that "[Appellants] have not cited to any case where a court has denied summary judgment based on the self-serving, conclusory, and uncorroborated testimony of two family members" is absurd.[31] Such authority is irrelevant because the Dondero Declarations are *corroborated by the summary judgment record*. Appellee has not provided the factually-specific authority it refers to, and Appellants have located none. However, Appellants

---

[27] *Gunville v. Gonzales*, 508 S.W.3d 547, 560 (Tex. App.—El Paso 2016, no pet.) (citing *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).
[28] *See* ROA.23-10911.74580-74601; ROA.23-10911.74656-74663.
[29] *Id.*
[30] *Bargher v. White*, 928 F.3d 439, 445 (5th Cir. 2019), as revised (July 2, 2019) (emphasis added).
[31] ROA.23-10911.7549 at ¶ 117.

provided authority showing that *only one party must* testify to the existence of an oral agreement to survive summary judgment in Texas.[32] Here, *both sides* of the Agreements testified to the Agreements' existence. The Dondero Declarations are not conclusory because they are supported by specific, articulable facts.[33]

Appellee relies on inapposite authority where courts granted summary judgment against defendants that provided conclusory declarations that were not supported by the record. Appellee cites *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996), for the proposition that "no reasonable jury could believe" that the Agreements existed and therefore summary judgment was properly granted.[34] *Eason* was a *pro se* civil rights case involving a prison gang fight that resulted in a lockdown for inmate safety.[35] In that case, the Court held that plaintiff "raised no issue of fact" because he "alleged in a conclusory manner that the lockdown was imposed for punitive reasons, [and] failed to offer evidence that the lockdown was instituted out of any concerns other than safety and prison security."[36]

The other cases cited by Appellee for the proposition that "self-serving" and "uncorroborated statement" are not the type of evidence required to defeat summary

---

[32] *See* Appellant Brief at pp. 43-44.
[33] *See* ROA.23-10911.74591-74594 at ¶¶ 23-30, Def. Appx. 13-16 (stating specifically when, where, how, and why the Agreements were made); ROA.23-10911.74658-74662 at ¶¶ 4-10 (showing same).
[34] Appellee Brief at p. 44.
[35] *Eason*, 73 F.3d at 1324.
[36] *Id.* at 1326–27.

CORE/3522697.0002/188427912.9

judgment are just as unpersuasive.[37] *Kariuki v. Tarango*, 709 F.3d 495 (5th Cir. 2013) is an immigration case in which plaintiff's moral character and fitness was an issue under immigration law.[38] In that case, plaintiff submitted "vague, self-serving, and conclusory affidavits . . . attesting to [plaintiff's] general 'volunteerism,'" that were overwhelmingly rebutted by the record and that showed many and recurring instances of plaintiff provably lying during depositions, on rental applications, and in his sworn answers.[39] As a result, the Court found that those affidavits could not create a genuine issue of material fact because they were vague, conclusory, and contradicted by conclusive evidence in the record and plaintiff's sworn statement that had he not made certain false representations for which he had been convicted.[40] The Dondero Declarations were not vague or conclusory and were not rebutted by conclusive non-rebuttable evidence as in *Kariuki*.

Similarly, in *BMG Music v. Martinez*, 74 F.3d 87 (5th Cir. 1996), also cited by Appellee, the Court affirmed a summary judgment when the defendant transferred property to his sister for no consideration after being sued.[41] In that case, defendant's only defense was his interrogatory answer where he claimed he transferred the

---

[37] Appellee Brief at p. 40.
[38] *Kariuki*, 709 F.3d at 499.
[39] *Id.* at 505.
[40] *Id.* at 505-06.
[41] *BMG*, 74 F.3d at 90–91.

property to appease his father who allegedly feared defendant would divorce his wife and the property could be lost to the wife, and a declaration from plaintiff's sister stating the same without any personal knowledge.[42] The court did not discuss any evidence from the father or evidence of discord between defendant and the wife.[43] The Court found the admitted transfer for no consideration on the heels of an admittedly undefended lawsuit was evidence of fraud and found "[t]the record contains no other evidence to overcome the strong inference of fraud raised by [defendant's] admissions."[44] By contrast, here Appellants made no admission going to the heart of the claim, namely whether the Agreements were actually entered into, and there is supporting evidence from the witnesses with personal knowledge. In other words, this case contains the critical evidence lacking in *BMG*.

*DIRECTV, Inc. v. Budden*, 420 F.3d 521 (5th Cir. 2005), also cited by Appellee for the proposition that a party attempting to "create a fact issue as to his knowledge by relying on a conclusory and self-serving affidavit is on unsteady ground,"[45] is also irrelevant. In that case, a telecom piracy case in which defendant distributed over 100 devices used to illegally gain access to satellite services, summary judgment was granted, not because defendant's affidavit was "conclusory and self-

---

[42] *Id.* at n. 18.
[43] *Id.*
[44] *Id.* at 91.
[45] Appellee Brief at p. 44.

serving" but because it rebutted defendant's specific intent to commit piracy when the statute at issue only required "constructive knowledge," not actual knowledge.[46] In other words, the affidavit was effectively not evidence at all, making *DIRECTV* inapplicable to this case.

Appellee also cites *United States v. Lawrence*, 276 F.3d 193 (5th Cir. 2001) for the proposition that uncorroborated, self-serving statements are not enough to create an issue of material fact to defeat summary judgment.[47] *Lawrence* is a student loan lawsuit in which the defendant responded to summary judgment with only his own affidavit stating that a third-party paid off the loans on his behalf.[48] The Court held that such an affidavit was "self-serving" and that because the third party was dead and defendant had no documentation confirming the third-party's repayment of the loan, "it does not seem any such evidence exists."[49] Here, as explained below and throughout Appellants' Brief, Appellants provided multiple pieces of evidence to support their defenses.

Appellants here point to summary judgment evidence that *supports* the facts asserted in the Dondero Declarations and are not simply bare assertions, standing alone. Specifically, (i) both Jim and Nancy Dondero testified at their depositions that

---

[46] *DIRECTV, Inc.*, 420 F.3d at 531-32.
[47] Appellee Brief at p. 43.
[48] *Lawrence*, 276 F.3d at 197.
[49] *Id.*

CORE/3522697.0002/188427912.9

the Agreements took place, (ii) Nancy Dondero acknowledged that Mr. Dondero told her that different entities made the Notes subject to the Agreements, (iii) Mr. Dondero's former attorneys alerted Appellee's counsel that "Mr. Dondero views the [N]otes in question as ***having been given in exchange for loans by Highland made in lieu of compensation*** to Mr. Dondero[,] and (iv) Mr. Dondero filed a proof of claim claiming that the Notes were "issued by him for funds advanced in lieu of compensation."[50] Thus, Appellee's claim that the Agreements are "blatantly contradicted by the record" is simply inaccurate.[51]

Appellee also points to *no "blatantly" contradictory evidence* in the record that it repeatedly claims exists.[52] Nowhere in the record will the Court find any testimony (firsthand or otherwise) or document that establishes the Agreements are a "fabricated story."[53] This makes sense, as Appellee builds its summary judgment case on the lack of written evidence which Appellee *opines* means that the oral Agreements never occurred. Following that logic, if an agreement is not written down, it cannot exist, *regardless of the affirmative testimony from both sides of the agreement*, which is contrary to Texas law.

---

[50] *See* ROA.23-10911.71055 at 400:8-19; ROA.23-10911.71206-71207 at 193:19-194:15; ROA.23-10911.71116 at 80:16-17; ROA.23-10911.71205 at 186:7-12; ROA.23-10911.74652 (emphasis added); ROA.23-10911.9665-9669.
[51] Appellee Brief at p. 18.
[52] *Id.*
[53] *Id.* at p. 44.

14

Appellee's inconvenient truth is simple: the established legal standard favors Appellants, both sides to the Agreements testified that the Agreements exist, and Appellee presented no controverting evidence. This is more than enough to show a genuine issue of material fact. Indeed, "[w]hen there is no written contract in evidence, and one party attests to a contractual agreement while the other vigorously denies any meeting of the minds, *determining the existence of a contract is a question of fact under Texas law*."[54] As demonstrated throughout Appellants' Brief, the Bankruptcy Court had testimony from *both sides* of the Agreements attesting to their existence. Therefore, the District Court must be reversed.

### C. Appellee Misconstrues and Continues to Ignore Basic Facts Supporting the Existence of the Agreements.

Appellee continues to misrepresent and ignore basic facts in an effort to misleadingly attempt to demonstrate that the Agreements did not exist. Appellee continues to argue that Mr. Dondero's failure to declare the Notes forgiven upon a sale of a small portion of Appellee's shares of MGM and the failure of the Agreements to be disclosed to PwC, the accounting firm and auditor for Appellee, is somehow evidence that the Agreements did not exist.[55] First, as discussed in the

---

[54] *In re Palms at Water's Edge, L.P.*, 334 B.R. 853, 857 (Bankr. W.D. Tex. 2005) (citing *Runnells v. Firestone,* 746 S.W.2d 845, 849 (Tex. App.—Houston [14th Dist.] 1988), writ denied, 760 S.W.2d 240 (Tex. 1988) (emphasis added); *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding*, 480 S.W.2d 607, 610 (Tex. 1972); *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ)).

[55] Appellee Brief at pp. 13, 23.

Appellant Brief, these are simply closing arguments that address the credibility of evidence and are properly made at trial, not summary judgment.[56] Nevertheless, as demonstrated below, even if these facts are relevant, Appellee ignores and misrepresents critical facts related to these issues.

For example, Appellants specifically explain that the reason that the Agreements were not disclosed to PwC was because such disclosure was not necessary based on Appellee's sizeable financial assets.[57] As it did when this case was pending in the Bankruptcy Court, Appellee continues to ignore this undisputed fact.[58]

Similarly, Appellants also explained that the Notes were indeed declared forgiven after the complete sale of MGM to Amazon, liquidating all of Appellee's interest in MGM.[59] And with respect to the small amount of MGM shares sold in November 2019, as explained in their Appellant Brief, Appellee was estopped from arguing that Dondero should have declared forgiveness at that time because Appellee admitted in its discovery responses that this small sale would not qualify as a sale of all or substantially all of Appellee's position, which was necessary to

---

[56] Appellant Brief at p. 42.
[57] Appellant Brief at pp. 47-48.
[58] Appellee Brief at pp. 22-23.
[59] Appellant Brief at pp. 42-43.

CORE/3522697.0002/188427912.9

trigger forgiveness under the Agreements.[60] Again, Appellee addresses none of these arguments or evidence in its Appellee Brief.

### D. Appellants Demonstrated that the Agreements Were Supported by Adequate Consideration.

The Bankruptcy Court incorrectly adopted Appellee's argument that the Agreements were unenforceable because of a lack of consideration. In arriving at this conclusion, however, the Bankruptcy Court ignored critical facts and failed to properly apply the law on consideration. Initially, as fully detailed and briefed in the Appellant Brief, consideration can consist of either a benefit to the promisor *or* a detriment to the promisee and thus there is valid consideration "when a party gives up a pre-existing legal right."[61] And, here, Mr. Dondero's forbearance from increasing his own compensation, a legal right he had before entering into the Agreements, is adequate consideration for the Agreements.[62]

The Bankruptcy Court ignored all these facts and all relevant law and instead incorrectly found that the Agreements lacked consideration because "HCMFA does not even allege that HCMFA gave any consideration to Highland in exchange for Highland's alleged agreement to forgive HCMFA's indebtedness under the Pre-2019 Notes upon the occurrence of a condition subsequent."[63] Appellee made the

---

[60] *Id.* at p. 43.
[61] *Id.* at p. 49, n. 157.
[62] *Id.* at p. 49.
[63] ROA.23-10911.7649

CORE/3522697.0002/188427912.9

same argument in its Appellee Brief (without even seeking to cite any relevant law other than weak attempts to distinguish cases cited by Appellants).[64] Both the Bankruptcy Court and Appellee failed to recognize or address the fact that Mr. Dondero gave up a preexisting right as part of the Agreement and that this is valid consideration under Texas law. Nowhere in its Appellee Brief did Appellee dispute the facts or the law set forth by Appellants on this point. Thus, as the Texas Supreme Court has held, consideration is an issue of fact for the jury that should have precluded summary judgment.[65]

### E. Appellees Improperly Make New Arguments on Appeal Related to the Authority Necessary to Enter into the Agreements.

Appellee argued below that Dugaboy lacked the authority to enter into the Agreements under the LPA and Appellants addressed that argument at length in their Appellant Brief.[66] Apparently recognizing that its argument that there is no authority under the LPA lacks merit, Appellee makes a different argument related to authority — that Dugaboy lacked authority to enter into the Agreements under Delaware

---

[64] Appellee Brief at pp. 54-55. For example, Appellee seeks to distinguish *Katy Int'l, Inc. v. Jinchun Jiang*, 451 S.W.3d 74 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) because that case had written evidence of the consideration, as well as both *Hoard v. McFarland*, 229 S.W. 687 (Tex. App.—Texarkana 1921, writ ref'd) and *Brown v. Jackson*, 40 S.W. 162 (Tex. Civ. App. 1897, no writ) because they are old cases, neither of which is a justification for them to be ignored here.
[65] *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (determining that adequacy of consideration is a question of fact for the jury).
[66] Appellant Brief at pp. 52-53.

18

law.[67] In its Appellee Brief, Appellee now argues that Dugaboy was not authorized to enter into the Agreements because "[u]nder Delaware law, a limited partner is generally prohibited from acting for the partnership."[68] Not only was this argument never made below,[69] but the authorities cited by Appellee do not so state.

Appellee cites *In re El Paso Pipeline, L.P. Derivative Litig.*, 132 A.3d 67, 83 n. 5 (Del. Ch. 2015) (*citing* Martin I. Lubaroff & Paul M. Altman, *Delaware Limited Partnerships* (Supp. 2015)) for this prohibition, but neither of these authorities states that a limited partner lacks authority to enter into agreements on behalf of a limited partnership. Rather, they only state, "[g]enerally, a limited partner does not participate in the control of the business of the partnership."[70] There is simply no *prohibition* against a limited partner entering into agreements on behalf of a limited partnership, let alone participating in the control of a business under Delaware law; limited partners that do participate in the control of a limited partnership simply risk assuming the liability of that limited partnership.[71] And Appellee has not even tried to argue or provide evidence that entering into an agreement amounts to participating

---

[67] Appellee Brief at pp. 28-29.

[68] *Id.* at p. 28.

[69] ROA.23-10911.28693-28694; ROA.23-10911.37026-37027 (both of which limit the authority arguments to the LPA and not what is allowed under Delaware law).

[70] *In re El Paso Pipeline, L.P. Derivative Litig.*, 132 A.3d 67, 83 n. 5 (Del. Ch. 2015), judgment entered sub nom. *In re: El Paso Pipeline Partners, L.P.* (Del. Ch. 2016) and rev'd sub nom. *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016) (*citing* Martin I. Lubaroff & Paul M. Altman, *Delaware Limited Partnerships* (Supp. 2015)).

[71] *Forsythe v. ESC Fund Mgmt. Co.(U.S.), Inc.*, CA. No. 1091-VCL, 2007 WL 2982247, at *12 (Del. Ch. Oct. 9, 2007).

in control of the business. Simply put, Appellee is improperly attempting to interject a new argument, but that argument is factually and legally incorrect and should be ignored.

### F. Appellants Demonstrated a Genuine Issue of Material Fact Regarding Their Prepayment Defenses.

Appellants have shown a genuine issue of material fact related to the NexPoint and HCMS prepayment defenses, something that the Report (and therefore the District Court) failed to address with any meaningful substance. Appellants routinely made large prepayments on the NexPoint and HCMS Term Notes throughout the year before the annual scheduled payments' due dates.[72] Appellee credited these prepayments towards the then regularly scheduled annual payments. Appellee's argument that Appellants are attempting to "create an ambiguity" falls flat.[73] Appellee *never once declared the Term Notes to be in default in years prior when Appellants made prepayments until 2020*.[74] Thus, if there truly was no ambiguity, as Appellee argues, Appellee **would** have declared the Term Notes in default in years past when NexPoint and HCMS did not make their regularly scheduled annual payments in full. But Appellee did not declare the Term Notes in default in years past, which shows ambiguity in the Term Notes' terms and opening the door for the

---

[72] ROA.23-10911.72533 (showing prepayments on the NexPoint Term Note); ROA.23-10911.74603 (showing prepayments on the HCMS Term Note).
[73] Appellee Brief at p. 63.
[74] Appellant Brief at pp. 25, 62-63.

Court to consider extrinsic course of conduct evidence between Appellee and the Term Note Appellants. Appellee's own authority supports Appellants' position here. *Addicks Services, Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) (allowing courts to consider parol evidence when there is a contractual ambiguity).

Additionally, as detailed in the Appellant Brief, Appellee never directly addressed Appellant HCMS's prepayment defense in is motion for summary judgment. The Klos Declaration, submitted by Appellee, only addresses the NexPoint prepayment defense and fails to mention or address the HCMS Term Note in any way.[75] This is again ignored by Appellee in its Appellee Brief. Because both Appellee and the Bankruptcy Court (and, subsequently, the District Court) either ignored or improperly disregarded Appellants' summary judgment evidence, Appellee's motion for summary judgment should have been denied with respect to the prepayment defenses asserted by HCMS and NexPoint.

## G. Appellants Demonstrated a Genuine Issue of Material Fact Regarding Their Shared Service Defenses.

Appellants showed a genuine issue of material fact related to whether Appellee was responsible for making certain Term Note payments under its SSAs with NexPoint, NPREP, and HCMS.[76] Under the SSAs, Appellee had to manage

---

[75] *See* Appellant Brief at p. 24.
[76] *See Id.* at Section V.D.

"back- and middle-office" tasks for NexPoint, NPREP, and HCMS.[77] This responsibility included making payments on "accounts payable."[78] But *Appellee decided on December 1, 2020, that it was not going to make any of the scheduled Term Note payments* for 2020.[79] Thus, Appellee's own negligence caused the Term Notes to go into default. Appellee's attempt to attack Appellants' sound authority and reasoning falls flat.

Appellee's reliance on *Addicks Services, Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) for the proposition that parol evidence may be considered only when a contract is ambiguous[80] is not on point here. Appellants argue not that the SSA is ambiguous, but that it unambiguously states that Appellee is tasked with making the Term Note Payments in question and that any missed payments result from Appellee's negligence.[81] There is no dispute that Appellee knew about, but failed to make, the December 31, 2020, payments and it is undisputed that no one at HCMS or NPREP directed any person to skip the payments on these notes.[82]

---

[77] ROA.23-10911.74594-74597 at ¶¶ 32-39; ROA.23-10911.73449-73450 (evidencing responsibilities for back- and middle-office tasks).
[78] ROA.23-10911.73449-73450.
[79] *See* ROA.23-10911.72435-72436 at 100:20 -102:13.
[80] Appellee Brief at p.61.
[81] Appellant Brief at pp.53-54.
[82] ROA.23-10911.74596-74597.

CORE/3522697.0002/188427912.9

Additionally, as explained in more detail in their Appellant Brief, Appellants' expert, Steven J. Pully, testified about shared services agreements and how they work, including discussing how they were common in the private equity industry and exist to consolidate function and manpower between large and small entities that share overlapping ownership structure.[83] The Bankruptcy Court precluded Appellants from relying on Mr. Pully and Appellants objected to this exclusion.[84] Appellee fails to address any of this in its Appellee Brief.[85] Whether Appellee should have made those payments under the SSAs is a genuine issue of material fact and thus summary judgment was improper.

## H. Appellant NAM's Mutual Mistake Defense Creates a Genuine Issue of Material Fact.

Appellee argues that Frank Waterhouse ("Waterhouse") had the actual authority to sign the demand notes because he was an officer of both entities and Appellee's incumbency certificate authorized him to execute any agreements on Appellee's behalf.[86] Even if the Court construes this as absolute authority, it is only half of the equation. Appellee offers no evidence showing that Waterhouse had the authority to bind Appellant NAM to debts and notes of this size. More importantly, both Waterhouse and Mr. Dondero testified that Waterhouse lacked authority to

---

[83] Appellant Brief at p. 17 at n. 54.
[84] *Id.*
[85] Appellee Brief at pp. 60-62.
[86] *See* Appellee Brief at pp. 30-31.

CORE/3522697.0002/188427912.9

enter into loans of this size without Mr. Dondero's approval.[87] And the incumbency certificate is not a corporate governance document that confers actual authority. It is, at best, evidence subject to contrary evidence like the testimony of Nancy Dondero and Waterhouse as to Waterhouse's actual authority, showing a genuine issue of material fact. That Waterhouse signed other similar intercompany agreements is not evidence of his actual authority because Waterhouse would have had authority, but only if the agreements were approved by Mr. Dondero.[88]

Next, Appellee seeks to shift the burden of proof by arguing that, even if Waterhouse testified that he lacked actual authority to bind Appellant NAM to the notes, he "never testified that he did not have authority to execute the Notes."[89] "Texas law does not presume agency, and the party who alleges it has the burden of proving it."[90] The U.C.C. likewise requires that a creditor demonstrate the authority of the person signing a promissory note for a corporate principal.[91] Appellee bears the burden of proving its allegation that Waterhouse had the authority to bind it to the notes.[92] Thus, what matters is that Waterhouse did not testify that he *had* Mr.

---

[87] *See* Appellant Brief at p. 69.
[88] *See* Appellant Brief at pp. 78-79.
[89] *See* Appellee Brief at p. 65.
[90] *IRA Res., Inc. v. Griego*, 221 S.W. 3d 592, 597 (Tex. 2007).
[91] See Tex. Bus. & Comm. Code Ann. §§ 3.308(a) & 3.402(a); *Silverio v. Silverio*, 625 S.W.3d 680, 685 (Tex. App.—El Paso 2021, no pet.) ("[t]he validity of the signature on the note must be proved by the person claiming validity if validity is denied in the pleadings.").
[92] *See* Appellant Brief at p. 29.

Dondero's approval. Rather, Waterhouse testified that Mr. Dondero did not tell him to paper the transfers as loans.[93] Thus, no evidence suggests, much less proves, Waterhouse's actual authority. Even if there were, it is countered by contrary evidence precluding summary judgment.

Appellant NAM has already briefed that Waterhouse could not have had apparent authority because apparent authority cannot apply when the party knows of the agent's lack of actual authority, which Waterhouse would have known here since he was on both sides of the transaction.[94] In response, Appellee argues that Appellant NAM "offers no support for of (sic) its contention that there is 'no apparent' authority when the same individual is on both sides of the transaction and he knows he lacks 'actual authority.'"[95] Appellant NAM's argument, however, is fully supported by the authority Appellant NAM has already briefed.[96]

*Gaines* is instructive for another reason, holding that, when assessing apparent authority, "only the conduct of the principal is relevant."[97] In other words, the principal must knowingly permit an agent to hold himself out as having authority or the principal must lack ordinary care by seemingly clothing an agent with authority

---

[93] *See* ROA.23-10911.71404 283:4-5, ROA.23-10911.71413 318:8-10 ("[G]o get the money from Highland" was the only instruction).
[94] *See* Appellant Brief at p. 68.
[95] *See* Appellee Brief at p. 67.
[96] *Douglass v. Panama Inc.*, 504 S.W.2d 776, 779 (Tex. 1974) ("[A]pparent authority is not available where the other contracting party has notice of the limitations of the agent's power.").
[97] *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

CORE/3522697.0002/188427912.9

such that a reasonable third party would reasonably assume the agent had actual authority.[98] Appellee introduced no evidence that Appellant NAM knowingly permitted Waterhouse to hold himself out as having actual authority to bind Appellant NAM to the notes, or that Appellant NAM did so negligently.

Accordingly, Waterhouse did not have apparent authority, as he testified that only Mr. Dondero could have authorized loans of the size of the NAM demand notes, and Appellee failed to offer evidence establishing Waterhouse's actual authority to bind Appellant NAM, which is Appellee's burden to prove.

Additionally, in its Appellee Brief, Appellee completely ignores the fact that Waterhouse did not actually sign the NAM notes. As detailed in their Appellant Brief, Appellants provided evidence that Appellee finally produced the original notes months after they had been requested and the original versions made it clear that Waterhouse did not sign the NAM notes.[99] Rather, Kristin Hendrix, a junior accountant, affixed a .jpg image of his signature.[100] Importantly, Waterhouse did not authorize Ms. Hendrix to sign his name; Ms. Hendrix admitted she was using a form promissory note, which she revised and saved as a new note on the system without seeking or obtaining Waterhouse's authorization to sign his name and without

---

[98] *See id*.
[99] Appellant Brief at pp.66-67.
[100] *Id.*

sharing the completed notes with him.[101] Appellee does not dispute any of these facts in its Appellee Brief. Thus, because NAM did not execute the notes because Waterhouse did not sign them, and neither he nor Ms. Hendrix had the authority to do so in any event, the notes are not valid under Texas law and summary judgment was inappropriate.

## III. CONCLUSION

For all the reasons set forth here and in Appellants' Opening Brief, Appellants ask this Court to reverse the District Court's order adopting the Reports and Recommendations by the Bankruptcy Court. Appellants also request all further relief that the Court deems just and proper.

---

[101] *Id.*

CORE/3522697.0002/188427912.9

Respectfully submitted this 23rd day of April, 2024,


By: */s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez, Esq.
Michael Aigen, Esq.
**STINSON LLP**
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203

Davor Rukavina
Julian P. Vasek
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
(214) 855-7500 telephone
(214) 978-4375 facsimile

**ATTORNEYS FOR APPELLANTS**

CORE/3522697.0002/188427912.9

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(b) as amended by order dated, October 16, 2023, in that this brief contains 6,417 words, excluding parts of the brief exempted by Fed R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point for footnotes).

By: */s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2024, the foregoing Motion was electronically filed using the appellate CM/ECF system. I further certify that all participants here are registered CM/ECF users and that service will be accomplished via CM/ECF.

By: */s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez

CORE/3522697.0002/188427912.9